UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

MATTHEW ABRAMOVICH,
    *Plaintiff*,

    v.

ANGEL QUIROS, et al.,
    *Defendants*.

No. 3:23-cv-1330 (VAB)

**INITIAL REVIEW ORDER**

Matthew Abramovich ("Plaintiff"), who was formerly in the custody of the Connecticut Department of Correction ("DOC"), filed this civil rights Complaint under 42 U.S.C. § 1983 against DOC Commissioner Angel Quiros, New Haven Correctional Center ("NHCC") Warden Brian Vigor, and Nurse Supervisor Timiki Jackson in their individual capacities. Compl., ECF No. 1.[1] Mr. Abramovich seeks damages from all defendants in their individual capacities.

For the following reasons, this case shall proceed only on Mr. Abramovich's Fourteenth Amendment deliberate indifference claims against Nurse Supervisor Timiki Jackson and Warden Brian Vigor in their individual capacities.

I.     **FACTUAL ALLEGATIONS**[2]

On November 28, 2020, Mr. Abramovich, then housed at NHCC, allegedly experienced chest pain. Compl. at ¶ 1. He allegedly was escorted to the medical unit where he sat down to catch

---

[1] Rule 10 of the Federal Rules of Civil Procedure states: "The title of the complaint must name all the parties." Fed. R. Civ. P. 10(a). Thus, the Court only considers whether Mr. Abramovich has alleged plausible claims against the individuals named in the case caption.

[2] The Court does not include herein all of the allegations from the complaint but summarizes the facts to provide a context to this initial review.

his breath and requested an inhaler. *Id.* at ¶ 4.

Nurse Supervisor Jackson allegedly yelled at him in a very unprofessional manner and told him that no one "is talking to [him]." *Id.* at ¶ 5. Nurse Jackson allegedly later "kicked" him out of the medical unit and told him that he was going to segregation. *Id.* at ¶¶ 6-7. Mr. Abramovich allegedly had not received any medical treatment at the time he was escorted out of the medical unit. *Id.* at ¶¶ 7-9. Mr. Abramovich allegedly claims that he suffers from bronchial asthma, high blood pressure/hypertension and alcohol seizures, and that Nurse Jackson allegedly was aware or should have been aware of his conditions. *Id.* at ¶ 10.

Mr. Abramovich alleges he was placed in "supermax isolation" because of "Nurse Jackson's vague discretion." *Id.* at ¶ 13. He allegedly was issued a disciplinary report for interfering with safety and security for the stated reason that he was being assessed for chest pain when he expressed that "all he needed was a refill of his inhaler." *Id.* at 8 (disciplinary report). The disciplinary report allegedly indicates that Nurse Jackson was the reporting employee, but a non-defendant Lieutenant allegedly issued the disciplinary report.

On November 30, 2020, Mr. Abramovich allegedly had not received any medical attention. *Id.* He allegedly was later coerced to plead guilty to the disciplinary violation with a promise of receiving medical attention. *Id.* at ¶¶ 14-15. He claims that he was advised by the disciplinary officer that would not have been able to stay in segregation for fourteen days without medical attention if he pleaded not guilty. *Id.* at ¶ 15.

Mr. Abramovich alleges that he had no soap, clean clothing, hygiene supplies, writing utensils, telephone access, and only limited showers while he was in segregation for fourteen days. He also allegedly may have been exposed to the COVID virus. *Id.* at ¶ 16.

He allegedly was seen by APRN Silva on December 11, 2020. *Id.* at ¶ 17. She allegedly

2

ordered him an X-ray and inhaler the next day. *Id.* at ¶ 18.

On December 18, 2020, the X-ray results allegedly showed he had broken ribs. *Id.* at ¶ 18. He then allegedly received a bottom bunk pass, but Mr. Abramovich complains he still did not have "a table to use." *Id.* at ¶ 18. Mr. Abramovich also allegedly continued to suffer because he had no inhaler. *Id.* at ¶ 19. He also allegedly suffered from sleep deprivation and hallucination. *Id.* at ¶ 21.

Mr. Abramovich allegedly asked Warden Vigor to dismiss his disciplinary report but his request was denied. *Id.* at ¶ 22. As a result, Mr. Abramovich allegedly lost his bed placement for court ordered treatment. *Id.* at ¶ 22; at 15. Mr. Abramovich allegedly had to wait for a higher level of care for a bed at "CVH," which the court assumes refers to Connecticut Valley Hospital). *Id.* at ¶ 23.

Mr. Abramovich allegedly may have received a lenient sentence if Warden Vigor had waived his disciplinary charge. *Id.* at ¶ 24.

## II.    STANDARD OF REVIEW

Under 28 U.S.C. § 1915A, the court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 550 U.S. at 570. Nevertheless, it is well-established that *"[p]ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)).

## III.    DISCUSSION

Mr. Abramovich asserts claims for damages arising from deliberate indifference to his medical needs against Defendants in their individual capacities.[3]

After providing the applicable standard for these claims, the Court will address the claims against each Defendant in turn.

42 U.S.C. § 1983 "provides a private right of action against any person who, acting under color of state law, causes another person to be subjected to the deprivation of rights under the Constitution or federal law." *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999). "The common elements to all § 1983 claims are: '(1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" *Lee v. City of Troy*, 520 F. Supp. 3d 191, 205 (N.D.N.Y. 2021) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).

A plaintiff seeking monetary damages from a defendant must allege facts that establish the

---

[3] To the extent he asserts official capacity claims for monetary damages against Defendants (all state employees), such claims are dismissed as barred by the Eleventh Amendment. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

personal involvement of that defendant in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 886 (2d Cir. 1991))). This is true with respect to supervisory officials, as well. *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) (holding that a plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability" in order to hold a state official liable for damages under § 1983, and that "it is not enough for [a plaintiff] to show that [a defendant] was negligent, or even grossly negligent, in her supervision of the correctional officers or in failing to act on the information she had").

### A.    Commissioner Quiros

Mr. Abramovich has not alleged any facts to describe conduct by Commissioner Quiros. Because the Second Circuit has established that a plaintiff must plead that supervisory defendants violated a constitutional amendment "by [their] own conduct, not by reason of [their] supervision of others who committed the violation," *id.*, Mr. Abramovich may not proceed on his constitutional claims against Commissioner Quiros. *See Oh v. Quiros*, No. 3:24-CV-148 (SVN), 2024 WL 896605, at *3 (D. Conn. Mar. 1, 2024) (dismissing claims under section 1983 against Nurse Supervisor absent allegations about her conduct to violate his rights); *Smith v. Perez*, No. 3:19-CV-1758 (VAB), 2020 WL 2307643, at *5 (D. Conn. May 8, 2020) (dismissing all claims against defendants where complaint established no connection between defendants and alleged constitutional violations).

Accordingly, Commissioner Quiros will be dismissed from this lawsuit.

### B.    The Deliberate Indifference Claims

Mr. Abramovich's Complaint indicates that he was a pretrial at the time relevant to this complaint. Compl. at pp. 5, 15. Although Mr. Abramovich has brought his claims about medical indifference under Eighth Amendment, the Due Process Clause of the Fourteenth Amendment governs his claims of deliberate indifference brought by pretrial detainees. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017); *Haslinger v. Westchester Cnty.*, No. 7:18-CV-05619 (PMH), 2020 WL 2061540, at *7 (S.D.N.Y. Apr. 29, 2020).

This is so because pretrial detainees "have not been convicted of a crime and thus may not be punished in any manner—neither cruelly and unusually nor otherwise." *Darnell*, 849 F.3d at 29 (internal quotation marks omitted). Although Mr. Abramovich has incorrectly pleaded his deliberate indifference claims under the Eighth Amendment, the Court—affording the required special solicitude to his *pro se* submissions—will consider his deliberate indifference claims as brought under the Fourteenth Amendment. *See Charles v. Orange Cnty.*, 925 F.3d 73, 85-86 (2d Cir. 2019) (pretrial detainee medical indifference claims fall under the Fourteenth Amendment).

A claim that a prison official has acted with deliberate indifference under the Fourteenth Amendment involves analysis of two prongs: (1) an objective prong, which requires a Mr. Abramovich to show that "the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process"; and (2) a subjective or "*mens rea*" prong, which requires a Mr. Abramovich to show that the defendant "acted with at least deliberate indifference to the challenged conditions." *Darnell*, 849 F.3d at 29. With respect to the first prong of a deliberate indifference claim, the Mr. Abramovich must show that the conditions he experienced "either alone or in combination, pose[d] an unreasonable risk of serious damage to his health." *Id.* at 30. A district court evaluates the conditions to which the detainee was exposed in the context of contemporary standards of decency and addresses, *inter alia*, whether the

detainee has been deprived of basic human needs including, for example, food, clothing, shelter, medical care, and reasonable safety, or has been subjected to an unreasonable risk or serious harm to his or her future health. *Id.* (internal quotation marks and citations omitted).

With respect to the second prong, "the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35. Negligence is insufficient to satisfy this component. *Id.* at 36 (detainee must show that defendant acted recklessly or intentionally, not merely negligently).

1.    Nurse Supervisor <u>Jackson</u>

Although thin, Mr. Abramovich's allegations indicate that he had serious medical needs related to his chest pain and need for an inhaler. In addition, his allegations support an inference that Nurse Supervisor Jackson was aware of, but ignored, his serious medical needs for a chest assessment and inhaler. Thus, for purposes of initial review, Mr. Abramovich has sufficiently alleged that Nurse Supervisor Jackson acted with indifference to his medical needs in violation his rights under the Fourteenth Amendment.

To the extent Mr. Abramovich asserts that Nurse Supervisor Jackson is liable for his placement in segregation, the Complaint does not provide facts to suggest her involvement except as a reporting employee. An inmate does not have, however, a "general constitutional right to be free from being falsely accused in misbehavior report." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997). Nor do Mr. Abramovich's allegations support any inference that Nurse Supervisor Jackson has any direct personal involvement with his deprivations during segregation or his disciplinary proceedings.

Accordingly, the Court will permit Mr. Abramovich to proceed against Nurse Supervisor Jackson for damages on only his Fourteenth Amendment medical indifference claim.

    2.    <u>Warden Vigor</u>

The Court construes the Complaint's allegations to suggest that Warden Vigor acted with deliberate indifference, when he caused a delay in Mr. Abramovich's ability to participate in court-ordered treatment by refusing to waive the disciplinary violation on December 16, 2020. Compl. at ¶¶ 22-24, p. 15.

The Fourteenth Amendment standard set forth in *Darnell* applies also to a pretrial detainee's claims involving a denial or delay in the provision of medical treatment to a pretrial detainee. *See, e.g., Roice v. Cty. of Fulton*, 803 F. App'x 429, 430, 432 (2d Cir. 2020) (summary order) (applying *Darnell's* Fourteenth Amendment standard to pretrial detainee's claim that prison medical providers failed to promptly treat his complaints of abdominal pain and nausea). When the basis for an inmate's constitutional indifference claim "is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone in analyzing whether the alleged deprivation is, in objective terms, sufficiently serious, to support an Eighth Amendment claim." *Chimney v. Quiros*, No. 3:21-CV-00321 (JAM), 2021 WL 5281608, at *8 (D. Conn. Nov. 12, 2021) (quoting Eighth Amendment delay standard in context of Fourteenth Amendment claim and citing *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003)) (emphasis in original).

Here, Mr. Abramovich's allegations indicate that he had to wait approximately three months until he could obtain another placement for his treatment. *See* Compl. at ¶ 23. The Court thus will permit Mr. Abramovich to proceed for further development of the record on his claim

that Warden Vigor acted with indifference to his need for treatment in violation of the Fourteenth Amendment.

Mr. Abramovich's allegations do not, however, support any inference that Warden Vigor had any direct personal involvement with his deprivations arising from his segregation or his disciplinary proceedings. Warden Vigor "cannot be held personally liable for a constitutional violation by others simply based on a high position of authority in the prison system." *Wilson v. Santiago*, 2020 WL 5947322, at *5 (D. Conn. 2020) (citation omitted). In addition, Mr. Abramovich's speculative assertion that he may have received a lenient sentence had Warden Vigor waived his disciplinary offense is not state a plausible claim for relief. *See Bell Atl. Corp.*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level").

Accordingly, the Court will permit Mr. Abramovich to proceed against Warden Vigor for damages on a claim of Fourteenth Amendment indifference to his need for treatment claim only.

## III.    ORDERS

The Court enters the following orders:

(1) The case shall proceed on Mr. Abramovich's Fourteenth Amendment deliberate indifference claims against Nurse Supervisor Timiki Jackson and Warden Brian Vigor in their individual capacities.

(2) The Clerk of Court shall verify the current work address for Defendants Timiki Jackson and Warden Brian Vigor with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint and attachments to him at his confirmed addresses by **December 6, 2024**, and report on the status of the waiver request on **December 20, 2024**. If a Defendant fails to return the waiver request, the Clerk of Court shall make

arrangements for in-person individual capacity service by the U.S. Marshals Service on Defendant, and that Defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The Clerk of Court shall send a courtesy copy of the Complaint and this Order to the DOC Office of Legal Affairs and the Office of the Attorney General.

(4) Defendants shall file a response to the complaint, either an Answer or motion to dismiss, by **February 21, 2025**. If Defendants choose to file an Answer, Defendants shall admit or deny the allegations and respond to the cognizable claims recited above. Defendants may also include any and all additional defenses permitted by the Federal Rules.

(6) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed by **June 20, 2025**. Discovery requests need not be filed with the court.

(7) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(8) All motions for summary judgment shall be filed by **July 25, 2025**.

(9) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(10) If Mr. Abramovich changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. He must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If he has more than one

pending case, he should indicate all of the case numbers in the notification of change of address.

He should also notify Defendant or defense counsel of his new address.

      **SO ORDERED** at New Haven, Connecticut, this 15th day of November, 2024.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE